**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **ASHLEY N. SCHMIDT ROBERTSON,**<br><br>**Plaintiff,**<br><br>v.<br><br>**K1 INVESTMENT MANAGEMENT LLC, and TRACKFORCE, INC.,**<br><br>**Defendants.** | **Civil Action No. 25-3117 (ES) (JSA)**<br><br>**OPINION** |

**SALAS, DISTRICT JUDGE**

Before the Court is Defendants' motion to dismiss Plaintiff's Amended Complaint (D.E. No. 5 ("Amended Complaint" or "Am. Compl.")), pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (D.E. No. 7 ("Motion")).[1] The Court has carefully reviewed the Amended Complaint and the parties' submissions in support of and in opposition to the Motion (*see generally* D.E. No. 7-1 ("Mov. Br."); D.E. No. 13 ("Opp. Br."); D.E. No. 14 ("Reply Br.")), and decides the matter without oral argument, *see* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, the Court **GRANTS** Defendants' Motion.

## I.    BACKGROUND[2]

According to the Amended Complaint, on or about September 21, 2019, Plaintiff accepted an employment offer from Trackforce and worked "in sales" for the "Corporate Defendants" until

---

[1] Defendants include Trackforce, Inc., "a subsidiary of Trackforce Top Co., d/b/a Trackforce Valiant" ("Trackforce") and K1 Investment Management LLC ("K1," together with Trackforce, "Defendants"). (Am. Compl. at 1). Although Plaintiff purports to name "Trackforce Top Co." as a defendant in the opening paragraph of the Amended Complaint, the case caption and docket reflect otherwise, as noted above. (*See id.*). On March 17, 2026, Plaintiff voluntarily dismissed defendant Douglas Pierce from this action. (D.E. No. 27).

[2] For purposes of the instant Motion, the Court accepts the factual allegations as true and draws all inferences in the light most favorable to Plaintiffs. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The

her employment ended on August 9, 2024.  (Am. Compl. ¶¶ 1 & 6).  In November 2021, Plaintiff received a promotion to "Team Leader/Account Executive," including a 36% base salary increase to $125,000 with a "variable compensation target of $250,000.00 at 100% of plan achievement." (*Id.* ¶ 8).

Sometime in January 2023, Plaintiff attended a company-sponsored conference in Orlando, Florida at the "Kinetic /Crowne Plaza Universal."  (*Id.* ¶¶ 10–11).  In the late evening on January 25, 2023, Trackforce's then-Chief Revenue Officer ("CRO") caught up with Plaintiff and her co-workers in the "Lobby/Restaurant table."  (*Id.* ¶ 11).  The CRO "bought a round [of drinks] for the table and retired to his room."  (*Id.*).  Then, Trackforce's "C.O.O."—which the Amended Complaint refers to as the "Executive"—arrived "inebriated" and "integrated with other employees," including Plaintiff, Jimmy Lorenzo, Nolan Schutzer, and others.  (*Id.* ¶¶ 11–12).  Plaintiff alleges that the Executive kissed her on the cheek, hung all over her, brushed his hands against her chest, touched her buttocks, and placed his hands in her sweatshirt pockets such that they rested on her private area.  (*Id.* ¶ 12).  All of this took place in front of Plaintiff's co-workers and superiors.  (*Id.*).  The Executive continued these actions as the group went into an elevator and ceased when James Grimes stood in between Plaintiff and the Executive.  (*Id.*).  The next morning, following the last conference meeting, the Executive offered Plaintiff a bottle of champagne noting how she "really need[ed] a drink."  (*Id.* ¶ 13).

Witnesses and co-workers reported the January 25, 2023 incident, presumably to Trackforce's seniority and/or its Human Resources Department.  (*See id.* ¶ 14).  In addition,

---

Court makes certain observations herein regarding factual gaps that would benefit from further clarity in an amended pleading.  Because many of the allegations are difficult to decipher, the Court parses through the allegations as best as possible under such circumstances.

Plaintiff alleges that she reported the alleged sexual harassment "in detail . . . to several high-ranking officials within the Corporate Defendants." (*Id.* ¶ 23). "Within the next day,"[3] Plaintiff's direct report required Plaintiff to give a statement regarding the incident—first to him and then to the Vice President. (*Id.* ¶ 14). The Human Resources Department also requested that Plaintiff provide a statement via Facetime. (*Id.*).

On February 1, 2023, the Executive was terminated. (*Id.* ¶ 15). On February 3, 2023, Trackforce's Chief Executive Officer ("CEO") reached out to Plaintiff "to see if [she] was OK." (*Id.* ¶ 16). Similarly, on February 6, 2023, the Chief Financial Officer reached out to Plaintiff. (*Id.*). On February 21, 2023, Jimmy Lorenzo and Nolan Schutzer—two employees present during the alleged sexual assault in Florida—were terminated. (*Id.* ¶ 17).

Plaintiff claims that the Executive sexually harassed her by engaging in "a pattern and practice of molesting [her]." (*Id.* ¶ 23). She further maintains that after she reported the Executive's behavior from the evening of January 25, 2023, the "Corporate Defendants embarked in a pattern of retaliation that culminated in the termination of her employment." (*Id.*). Plaintiff also claims that the "Corporate Defendants" knew or should have known about the Executive's "predilection for sexual harassment" and "hostility toward those that decline his advances." (*Id.* ¶ 40). She maintains that the "Corporate Defendants could have easily performed a background check" to uncover the Executive's prior behavior with other employers. (*Id.*).

Plaintiff alleges that she continued to do "exceptional work"—she earned both "pay raises and increased sales commissions." (*Id.* ¶ 18). Over a year after the alleged harassment, on

---

[3] It is unclear whether the "next day" refers to the day after the alleged incident or after the alleged reporting of the incident. It is also unclear whether the alleged reporting occurred on the day of the incident or sometime thereafter.

February 8, 2024, Plaintiff signed a "Sales Compensation Plan" dated January 1, 2024 to December 31, 2024. (*Id.* ¶ 19; *see id.* ¶ 7 (alleging that Plaintiff received a salary and earned commissions under a "written Commission Agreement dated January 1, 2024" to "December 31, 2024")). Although not explicitly alleged as a second promotion, Plaintiff maintains that her "impressive performance as a Senior Strategic Sales Representative continued" such that she "she received a 20% additional increase in base salary, $150,000.00 with Car Allowance ($3,323) which became effective May 1, 2024." (*Id.* ¶ 9).

On July 1, 2024, Kyell Vyncke, a new manager, gave Plaintiff a "Performance Improvement Plan" or "PIP." (*Id.* ¶ 20). Plaintiff alleges that she received the PIP two months after she received a salary increase and car allowance as directed by the CEO. (*Id.*). She further maintains that "[o]n information and belief" Kyell Vyncke "was positioned to terminate" Plaintiff. (*Id.*). On August 9, 2024, Plaintiff "was terminated from employment with the Corporate Defendants." (*Id.* ¶ 21).

According to the Amended Complaint, the "Corporate Defendants failed to perform" their "contractual and statutory obligations prior to and after the termination of Plaintiff Robertson's employment on August 9, 2024." (*Id.* ¶ 28). Specifically, she claims that Defendants failed "to remit [c]ommissions earned" in breach of the parties' contract. (*Id.* ¶ 29). In addition, she alleges that Defendants "received the benefit" of Plaintiff's services without payment to Plaintiff for commissions owed. (*Id.* ¶ 42). Thus, Plaintiff claims the "Corporate Defendants have been unjustly enriched" to her detriment and asserts that they "breached the Implied Covenant [of good faith and fair dealing]." (*Id.* ¶¶ 44 & 48).

"Upon information and belief" Plaintiff maintains that the "Corporate Defendants set forth a plan to amend, change, edit, the Commission Agreement [that was the] subject of Plaintiff

Robertson's employment." (*Id.* ¶ 33). Plaintiff "reasonably relied" on the representations in the Commission Agreement. (*Id.* ¶ 36). She claims that CRO Chris Schwartz "met with others within the Corporate Defendants' control" such as Kyell Vyncke and "sought a method to plan, agree, and scheme to defraud Plaintiff Robertson for Defendants' gain" by terminating her employment before "remitting payment for the [c]ommissions owed" to her. (*Id.* ¶¶ 33–34; *see id.* ¶ 35 (alleging that Schwartz and Vyncke "took the actions of unilaterally attempting to change the Commission Agreement" before terminating Plaintiff's employment)). The "Corporate Defendants" allegedly perpetrated these "fraudulent acts . . . to defraud Plaintiff Robertson of monies owed." (*Id.* ¶ 34). Furthermore, Defendants purportedly "made material [mis]representations by claiming in its August 9, 2024 termination [notice]" that an unspecified total "was the amount of [ ] [c]ommission owed [to] Plaintiff Robertson." (*Id.* ¶ 36).

Finally, Plaintiff maintains that she was "protected" under the New Jersey Wage Payment Law ("NJWPL") "and where applicable New York Labor Law § 191 (1) (c)."[4] (*Id.* ¶ 7). Without additional context, Plaintiff alleges that the "Corporate Defendants failed to abide by the [NJWPL]." (*Id.* ¶ 52). Plaintiff also "made several disclosures to Defendants' professionals that there were violations of said act and demanded payment of same." (*Id.*).

Based on these allegations, Plaintiff raises seven counts in the Amended Complaint, including: (i) violations of the New Jersey Law Against Discrimination ("NJLAD"), specifically

---

[4] The pleading makes two passing references to the purported applicability of New York state law. (Am. Compl. ¶¶ 7 & 48). Plaintiff is a resident of the State of New Jersey. (*Id.* ¶ 1). Defendants are, upon information and belief, corporations organized under the laws of the State of California with "*its* principal place of business" in Manhattan Beach, California. (*Id.* ¶ 2 (emphasis added)). Based on these, and all other allegations in the Amended Complaint, the Court cannot identify any facts that connect the parties or their respective activities to New York. (*See generally id.*). For these reasons, the Court declines to analyze Plaintiff's claims under New York law. To the extent Plaintiff files an amended pleading, she shall adequately allege facts that connect how New York Labor Law and other unspecified "statutory rights" under "New York state law" apply to her case. (*See id.* ¶¶ 7 & 48).

"gender discrimination, hostile work environment, & gender discrimination"[5] (Count I); (ii) breach of contract (Count II); (iii) "fraud and conspiracy to commit fraud" (Count III); (iv) "retaliation for making protected communications" under the NJLAD, N.J. Stat. Ann. § 10:5-1, *et seq.* (Count IV); (v) unjust enrichment (Count V); (vi) breach of the implied covenant of good faith and fair dealing (Count VI); and (vii) violations of the New Jersey Wage Payment Law ("NJWPL") pursuant to N.J. Stat. Ann. § 34:11-1 *et seq.* (Count VII).  (Am. Compl. ¶¶ 22–53).

On August 11, 2025, Defendants moved to dismiss the Amended Complaint.  (*See generally* Mov. Br.).  Plaintiff opposed the Motion (*see generally* Opp. Br.) and Defendants replied (*see generally* Reply Br.).

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  This pleading standard does not require detailed factual allegations; it does, however, demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted).  In addition, the plaintiff's short and plain statement of the claim must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

For a complaint to survive dismissal under Rule 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).  A claim is plausible on its face when "the plaintiff

---

[5]     The second reference to "gender discrimination" is duplicative.

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (internal citation omitted). "[T]hreadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" are all disregarded. *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018) (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). Further, a complaint may be considered frivolous where it relies on an "'indisputably meritless legal theory' or a 'clearly baseless' or 'fantastic or delusional' factual scenario." *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989)).

## III.    DISCUSSION

### A.    The Court Must Dismiss Defendant K1

At the outset, Defendants argue that the Could should dismiss all claims against K1 because Plaintiff fails to allege a single allegation as to K1 individually. (Mov. Br. at 5). Defendants assert that Plaintiff alleges her prior employer was defendant Trackforce and they further maintain that she improperly group pleads both Defendants collectively as the "Corporate Defendants." (*Id.*). In opposition, Plaintiff makes several factual assertions regarding K1 that are absent from the Amended Complaint. For example, Plaintiff asserts that "K1's personal involvement would be K-1 deciding and granting compensation in the form of Stock Options of K-1 to Plaintiff Robertson (i.e. compensation which was withheld) to the naming of K-1 Board Member Trevor Camption . . . for [a] period of two (2) years during the time complained of." (Opp. Br. at 1). Plaintiff also claims it is "ironic" that the same attorney represents both Defendants. (*Id.* at 3). As set forth below, the Court agrees with Defendants.

As noted above, pursuant to Federal Rule of Civil Procedure 8(a), a complaint must contain "sufficient facts to put the proper defendants on notice so that they can frame an answer" to the

plaintiff's allegations. *See Dist. Council 47, Am. Fed'n of State, Cnty. & Mun. Emps., AFL–CIO by Cronin v. Bradley*, 795 F.2d 310, 315 (3d Cir. 1986). Importantly, vague group pleadings "undermine[ ] the notice pleading regime of Rule 8." *Japhet v. Francis E. Parker Mem'l Home, Inc.*, No. 14-1206, 2014 WL 3809173, at *2 (D.N.J. July 31, 2014). "'Taken together,' Rules 8(a) and 8(d)(1) 'underscore the emphasis placed on clarity and brevity by the federal pleading rules.'" *Binsack v. Lackawanna Cnty. Prison*, 438 F. App'x 158, 160 (3d Cir. 2011) (quoting *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 702 (3d Cir. 1995)); *see also* 5 Wright & Miller, Fed. Prac. & Proc. Civ. § 1217 (3d ed.).

Here, the Amended Complaint is "anything but 'simple, concise, and direct.'" *See Binsack*, 438 F. App'x at 160 (quoting Fed. R. Civ. P. 8(d)(1)). Indeed, the Amended Complaint contains no specific allegations regarding K1 and refers to both Defendants collectively as the "Corporate Defendants" over two dozen times without distinguishing the alleged conduct of either party. (*See generally* Am. Compl.). The use of such vague group pleading "undermines the notice pleading regime of Rule 8," since it improperly seeks to make all defendants liable for all conduct alleged in the complaint. *See, e.g.*, *Japhet*, 2014 WL 3809173, at *2; *Ingris v. Borough of Caldwell*, No. 14-0855, 2015 WL 3613499, at *5 (D.N.J. June 9, 2015) ("[T]o the extent [p]laintiff seeks to lump several defendants together without setting forth what each particular defendant is alleged to have done, he has engaged in impermissibly vague group pleading.").

Finally, the Court cannot consider any factual assertions regarding K1 in Plaintiff's opposition brief that are absent from her Amended Complaint. *See, e.g.*, *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (citation modified)). Accordingly, defendant K1 is **DISMISSED** from this action.

8

**B.    The Court Must Dismiss Plaintiff's NJLAD Claims (Counts I & IV)**

**i.    Plaintiff's Hostile Work Environment Claim is Time-Barred (Count I)**

Defendants argue that Plaintiff's NJLAD hostile work environment claim based on her gender should be dismissed as time-barred. (Mov. Br. at 6). They claim that the alleged "touching incident" at issue occurred on January 25, 2023, and that a two-year statute of limitations applies to Plaintiff's claim. (*Id.*). Thus, Plaintiff's hostile work environment claim expired on January 25, 2025. (*Id.*). Plaintiff filed this action three months later, on April 23, 2025. (*See* D.E. No. 1 ("Compl.")).

Plaintiff's opposition focuses on alleged conduct that occurred shortly before her termination. (Opp. Br. at 5–6 (claiming that "the actions of discrimination, hostility, [and] retaliation led up to the August 9, 2024 termination")). As best as this Court can decipher, Plaintiff asserts that she filed a "notice [of claim]" for "hostile work environment and retaliation" on May 17, 2024. (Opp. Br. at 5; *see also id.* at 6 (arguing that "Defendants were formally advised of her legal representation on or about May 17, 2024")). Less than three months later, on July 1, 2024, Plaintiff received the PIP from a new manager. (*Id.* at 6). On August 9, 2024, Defendants terminated Plaintiff. (*Id.* at 5). Plaintiff invokes the continuing violations doctrine arguing that she may "pursue a claim for discriminatory conduct if she can demonstrate that each asserted act [by] Defendants is part of a pattern and at least one of those acts occurred within the statutory limitations period." (*Id.*).

The Court agrees that Plaintiff's NJLAD hostile work environment claim based on the January 25, 2023 incident is time-barred. "The [NJ]LAD is [ ] controlled by a two-year statute of limitations, which begins to run on the date of the final act of harassment." *Rowen v. City of*

*Bayonne*, No. 07-4237, 2009 WL 1470424, at *5 (D.N.J. May 26, 2009) (citing *Montells v. Haynes*, 627 A.2d 654, 658–60 (N.J. 1993)); *see also Rutledge v. Int'l Longshoremen's Ass'n AFL-CIO*, 701 F. App'x 156, 162 n.3 (3d Cir. 2017).  Relevant here, the only allegations of harassment occurred on January 25, 2023—the day the Executive allegedly touched Plaintiff while at a work event in Florida.  (*See generally* Am. Compl.).  Plaintiff asserts that on February 1, 2023, seven days after the incident, the Executed was fired.  (*See id.* ¶ 15). She does not allege that any other individual inappropriately touched or harassed her after January 25, 2023.  (*See generally* Am. Compl.).  Accordingly, under the NJLAD's two-year limitations period, Plaintiff had until January 25, 2025, to file her hostile work environment claim.  However, she filed the original complaint in this matter nearly three months later, on April 23, 2025.[6]  (*See* Compl.).  Furthermore, Defendants correctly note that Plaintiff's opposition "conflates her hostile work environment claim with her retaliation claim." (Reply Br. at 5).  Indeed, Defendants make clear that they do not seek dismissal of Plaintiff's NJLAD retaliation claim under the statute of limitations.  (*See* Mov. Br. at 6; Reply Br. at 5).  For all of these reasons, Plaintiff's attempt to invoke the continuing violations doctrine is unavailing.[7]

Thus, the Court **DISMISSES** Count I, specifically Plaintiff's NJLAD hostile work environment claim, *without prejudice* as time barred under the two-year statute of limitations.

---

[6]    While not dispositive, Plaintiff asserts that she filed this action on April 4, 2025. (Opp Br. at 5).  However, the docket reflects that Plaintiff filed this action on April 23, 2025.  (Compl.).  Moreover, the original complaint is signed and dated April 23, 2025.  (*Id.* at 13).

[7]    In addition, Plaintiff does not plead allegations that reflect a "notice [of claim]" to Defendants dated May 17, 2024.  (*See* Opp. Br. at 5).  This fact appears for the first time in Plaintiff's opposition brief, and, as noted above, Plaintiff cannot amend her pleading in opposition to Defendant's Motion. *See Com. of Pa. ex rel. Zimmerman*, 836 F.2d at 181.  Furthermore, Plaintiff opposes Defendant's Motion to dismiss her retaliation claim by citing the three-year statute of limitations for sexual assault under a Florida criminal statute.  (*See* Opp. Br. at 2 & n.1).  However, Plaintiff's Amended Complaint does not clearly set forth a separate claim under Florida law—nor has Plaintiff established a private right of action under Florida's criminal statute.

Because the Court agrees that Plaintiff's NJLAD hostile work environment claim is time barred, it need not address Defendants' remaining arguments.[8]

### ii.    Plaintiff Fails to Plead a Retaliation Claim (Count IV)

With regards to Plaintiff's NJLAD retaliation claim, Defendants maintain that Plaintiff has failed to plead any connection between her alleged sexual assault and termination. (*See* Mov. Br. at 7 ("Plaintiff has not pled a single fact that would even remotely suggest a connection between Plaintiff reporting the incident in January 2023—to which Plaintiff admits the Company responded immediately and fired the employee in question within days—and her eventual separation *twenty months* later in August of 2024.")). By contrast, the Amended Complaint reflects that for over a year *after* the alleged incident in January 2023, Plaintiff received promotions, salary increases, and additional benefits. (*Id.*). At bottom, Defendants argue that while Plaintiff's termination is an adverse employment action, it occurred over one year **after** Plaintiff's reporting of the incident "with intervening *positive* actions taken towards [her]" in the interim. (*Id.* at 9). As such, Plaintiff "cannot, as a matter of law, meet th[e] standard to state a claim for retaliation." (*Id.* (collecting

---

[8]    Placing the statute of limitations aside, the Court doubts whether Plaintiff has, at this stage, alleged a prima facie claim for hostile work environment under the NJLAD. A claim for hostile work environment sexual harassment has four elements: The plaintiff "must show that the complained-of conduct (1) would not have occurred but for the employee's protected status, and was (2) severe or pervasive enough to make a (3) reasonable person believe that (4) the conditions of employment have been altered and that the working environment is hostile or abusive." *Shepherd v. Hunterdon Developmental Ctr.*, 803 A.2d 611, 625 (N.J. 2002).

The first element does not appear to be in dispute. *See Lehmann*, 626 A.2d at 454 ("[W]hen a plaintiff alleges that she has been subjected to sexual touchings . . . , she has established that the harassment occurred because of her sex."). However, Defendants seem to argue that the conditions of Plaintiff's employment were not altered by severe or pervasive conduct because (i) the Executive was fired shortly after the incident and (ii) Plaintiff allegedly settled her claims against the Executive separately. Regardless of any separate claims Plaintiff resolved with the Executive individually, it remains true, based on operative pleading, that the touching incident was reported quickly and handled by senior personnel. Thereafter, Plaintiff received promotions and salary increases following the alleged incident. Furthermore, as noted above, Plaintiff does not allege that she experienced any additional severe or pervasive conduct after the January 25, 2023 incident. For these reasons, the Court doubts whether Plaintiff has adequately alleged that the severe or pervasive conduct would make a reasonable person believe that the conditions of her employment were altered.

cases)).

In opposing Defendant's Motion, Plaintiff's theory of retaliation shifts. Plaintiff's Amended Complaint is replete with allegations that Defendants retaliated against her based on Plaintiff's reporting of the alleged incident in or around the time it occurred in late January 2023. (*See, e.g.*, Am. Compl. ¶ 23). Now, however, Plaintiff appears to argue that the retaliation occurred after her counsel sent Defendants "a notice [of claim]" for her "hostile work environment and retaliation claims" on May 17, 2024. (Opp. Br. at 5; *see id.* at 6 (arguing that "Defendants were formally advised of her legal representation on or about May 17, 2024")). Plaintiff asserts that forty-four days later, on July 1, 2024, she received a PIP. (*Id.* at 6). And on August 9, 2024, eighty-three days after the May 17, 2024 notice, Plaintiff was terminated. (*Id.*).

Under the NJLAD, an employer may not retaliate against an employee because that employee "has opposed any practices or acts forbidden under [NJLAD] or because that person has . . . filed a complaint, testified or assisted in any proceeding under [NJLAD]." N.J. Stat. Ann. § 10:5-12(d); *see also Cortes v. Univ. of Med. & Dentistry of N.J.*, 391 F. Supp. 2d 298, 314 (D.N.J. 2005). "To state a prima facie case for retaliation under the NJLAD, a plaintiff must show that she (1) engaged in protected activity, (2) that she suffered an adverse employment action, and (3) that there was a causal connection between the protected activity and the adverse employment action." *Nuness v. Simon & Schuster, Inc.*, 221 F. Supp. 3d 596, 605 (D.N.J. 2016). To constitute protected activity, the complaint must be specific enough to notify the employer of the type of discrimination at issue. *Sanchez v. SunGard Availability Servs. LP*, 362 F. App'x 283, 288 (3d Cir. 2010). Moreover, "causation may be inferred from temporal proximity: i.e., protected conduct that is closely followed by the adverse action." *Maddox v. City of Newark*, 50 F. Supp. 3d 606, 623 (D.N.J. 2014) (first citing *House v. Carter–Wallace*, 556 A.2d 353 (N.J. 1989); and then citing

12

*Bimbo v. Burdette Tomlin Mem'l Hosp.*, 644 F. Supp. 1033 (D.N.J. 1986) (citation modified)). However, to allege an inference of discrimination, "temporal proximity . . . must be 'very close.'" *Id.* at 623–24 (quoting *Clark Cnty Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)).

As noted above, the operative pleading does not allege any conduct, notice, or other communication that occurred on May 17, 2024, and Plaintiff cannot amend her complaint in opposition to Defendant's Motion. (*See generally* Am. Compl.). Thus, based on the Amended Complaint, the only protected activity is Plaintiff's alleged "reporting [of the Executive's] lascivious behavior during a Company Event." (*See id.* ¶ 23). Although Plaintiff does not specify when she reported the alleged incident, a plausible reading of the Amended Complaint suggests that it occurred shortly after the incident occurred on January 25, 2023. Indeed, it was Plaintiff's (and others') alleged reporting of the incident that culminated in the Executive's termination on February 1, 2023; the same reporting also prompted multiple other executives to check-in with Plaintiff regarding her well-being. (*See id.* ¶¶ 14–16 & 23).

Because Plaintiff's alleged reporting of the January 25, 2023 incident occurred over a year before her termination on August 9, 2024, she has not established a causal connection between her protected activity and termination. *See, e.g.*, *Maddox*, 50 F. Supp. 3d at 624 (finding that the termination "did not 'closely follow' the protected activity" because "it occurred 15 months later" (collecting cases)); *see also Mercer v. SEPTA*, 608 F. App'x 60, 65 (3d Cir. 2015) (stating, under Title VII's framework that is equally applicable to NJLAD, that "[t]he adverse action must occur within days, not months, of the protected activity"). Accordingly, the Court **DISMISSES** Count IV, specifically Plaintiff's NJLAD retaliation claim, *without prejudice* for failure to state a claim.[9]

---

[9]    The Court declines to dismiss Plaintiff's retaliation claim *with prejudice*. (*See* Reply Br. at 6 n.4 (arguing that amendment would be futile because Plaintiff's counsel now knows that she "voluntarily resigned and was not

13

### iii.    Plaintiff Fails to Plead a Gender Discrimination Claim (Count I)

Although difficult to discern whether Plaintiff intended to pursue a separate claim for gender discrimination under the NJLAD (indeed, Defendants do not move on this potential claim), the Court *sua sponte* assesses this possible claim for judicial economy and completeness. *See Malat v. Borough of Magnolia*, No. 19-14841, 2020 WL 2553858, at *2 n.3 (D.N.J. May 20, 2020) ("District courts may dismiss claims that do not state causes of action *sua sponte*." (citing *Bintliff–Ritchie v. Am. Reinsurance Co.*, 285 F. App'x 940, 943 (3d Cir. 2008) ("The District Court has the power to dismiss claims *sua sponte* under Rule 12(b)(6).")))).

To state a claim for gender discrimination under the NJLAD, "a plaintiff must allege that she (1) is a member of a designated protected class; (2) was qualified for and performing the essential functions of the job; (3) suffered termination or adverse employment action; and (4) others not in the protected class did not suffer similar adverse employment decisions." *Gross v. City of Jersey City*, No. 18-9802, 2019 WL 2120312, at *4 (D.N.J. May 15, 2019) (citing *Victor v. State*, 4 A.3d 126, 141 (N.J. 2010)). The Third Circuit has noted that "an adverse employment action is one which is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Id.* (quoting *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001)). "Harassment alone is not enough." *Id.* (quoting *Ivan v. Cnty of Middlesex*, 595 F. Supp. 2d 425, 470 (D.N.J. 2009)).

Here, the word "gender" appears in the Amended Complaint twice—solely in Count I's title/header. (Am. Compl. at 6; *see also* Opp. Br. at 5 (noting that on May 17, 2024, Plaintiff's counsel notified Defendants of her "claims of gender discrimination, hostility, disparate

---

terminated")). Defendants' argument, much like Plaintiff's opposition brief, rests on information outside the four corners of the Amended Compliant.

treatment")).  Fatal to this potential claim, however, is Plaintiff's failure to allege that her male counterparts did not suffer similar adverse employment actions, i.e., termination combined with inadequate compensation.  (*See generally* Am. Compl.).  In addition, Plaintiff does not clearly allege that Defendants terminated her because of her gender.  (*See generally id.*).   Accordingly, to the extent Plaintiff intended to raise a gender discrimination claim under the NJLAD, she has not sufficiently alleged a claim for relief.  Thus, Count One, specifically Plaintiff's purported NJLAD claim for gender discrimination, is **DISMISSED** *without prejudice*.

### C.      Plaintiff Fails to Allege Fraud and Conspiracy Claims (Count III)

Next, Defendants argue that "the allegation that the Company changed its commission plan and offered a new plan—which Plaintiff signed—fails to plead a single element of either fraud or conspiracy to commit fraud."  (Mov. Br. at 11).  They further contend that "the vague and conclusory allegations entirely lack the level of detail necessary to meet the heightened pleading standard for a fraud claim" and fail to put them on notice of the "'precise misconduct' charged against them."  (*Id.* (quoting *Frederico v. Home Depot*, 507 F.3d 188, 201 (3d Cir. 2007))).

Plaintiff opposes, noting that the statute of limitations for fraud and conspiracy to commit fraud claims is six years; however, Defendants do not move to dismiss these claims on statute of limitations grounds.  (Opp. Br. at 7).[10]  She also argues that her "performance was so impressive that a 20% annual increase and automotive allowance was effective May 1, 2024."  (*Id.*).  She continues to note that Defendants received notice of her claims on May 17, 2024.  (*Id.*).  Plaintiff then quotes Paragraphs 33 and 34 of her Amended Complaint and asserts that the explanation in

---

[10]     Plaintiff makes similar statute of limitations assertions that are not at issue with respect to her remaining claims.  (*See* Opp. Br. at 8).

Paragraphs 32 to 36 of the same "significantly meets the requirements of" Rule 8 such that "the 12(b)(6) motion should be denied." (*Id.* at 8).

When a motion to dismiss involves an action for fraud, a plaintiff may not rely merely on conclusory statements, but must instead indicate at the very least who made the material misrepresentation giving rise to the claim and what specific representations were made to comply with Federal Rule of Civil Procedure 9(b). *South Broward Hosp. Dist. v. MedQuist Inc.*, 516 F. Supp. 2d 370, 380 (D.N.J. 2007); *see also Grant v. Turner*, No. 09-2381, 2010 WL 4004719, at *2 (D.N.J. Oct. 12, 2010) (applying heightened pleading standard to state-law fraud claims). To satisfy Rule 9(b), a plaintiff "must plead with particularity the circumstances of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Lum v. Bank of Am.*, 361 F.3d 217, 223–24 (3d Cir. 2004) (internal citations omitted). "To place the defendant on notice of the precise misconduct with which it is charged, a plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation, and must allege who made a misrepresentation to whom and the general content of the misrepresentation." *Hlista v. Safeguard Props., LLC*, 649 F. App'x 217, 221 (3d Cir. 2016) (citation modified).

"The standard for establishing a claim of common law fraud, fraudulent misrepresentation, and fraudulent inducement under New Jersey law is the same"—a plaintiff must allege "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Kare Distrib., Inc. v. Jam Labels & Cards LLC*, No. 09-0969, 2009 WL 3297555, at *4 (D.N.J. Oct. 9, 2009) (quoting *Banco Popular N. Am.*

*v. Gandi*, 876 A.2d 253, 260 (N.J. 2005)).  "Misrepresentation and reliance are the hallmarks of any fraud claim, and a fraud cause of action fails without them." *Banco Popular N. Am.*, 876 A.2d at 261.  "An alleged misrepresentation must be premised upon an assertion that is not in accord with the facts." *Read v. Profeta*, 397 F. Supp. 3d 597, 635 (D.N.J. 2019) (citing Restatement (Second) of Contracts § 159 cmt. a, c (1981)).  "However, the assertion 'must relate to something that is a fact at the time the assertion is made in order to be a misrepresentation. Such facts include past events as well as present circumstances but do not include future events.'" *Id.*  "Indeed, in order to constitute a fact, a statement's content must be susceptible of 'exact knowledge' at the time it is made." *Id.* (quoting *Alexander v. CIGNA Corp.*, 991 F. Supp. 427, 435 (D.N.J.) *aff'd*, 172 F.3d 859 (3d Cir. 1998)).

To state a valid claim for conspiracy, Plaintiff must allege "(1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means; and (4) proof of special damages." *Morganroth & Morganroth v. Morris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414 (3d Cir. 2003).  In addition, "to succeed on a civil conspiracy claim, the plaintiff must assert an underlying tort claim." *Trico Equip., Inc. v. Manor*, No. 08-5561, 2011 WL 705703, at *8 (D.N.J. Feb.22, 2011) (citing *Eli Lilly & Co. v. Roussel Corp.*, 23 F.Supp.2d 460, 496 (D.N.J. 1998)).  In other words, civil conspiracy is not an independent cause of action, and conspiracy liability depends on liability for the underlying tort. *See, e.g.*, *Eli Lilly*, 23 F. Supp. 2d at 497.

The Court finds that Plaintiff's common law fraud claim fails to meet the basic tenants of Rules 8(a) and 9(b).  First, the alleged misrepresentations Defendants purportedly made remain unclear.  While Plaintiff appears to claim that Defendants materially misrepresented commissions owed to her at the time of her termination, she does not allege the content of those

17

misrepresentations with specificity, who made them, or exactly when they occurred—whether on the day of Plaintiff's termination (i.e., August 9, 2024), or sometime thereafter. (*See* Am. Compl. ¶ 36). Furthermore, Plaintiff seems to allege that Defendants' purported misrepresentations contradicted her Commissions Agreement; however, the Amended Complaint lacks specific allegations regarding the agreement's exact terms, particularly those terms that govern a termination. (*See id.*). Second, Plaintiff does not plead whether Defendants knew or believed that their alleged misstatements were false. (*See generally id.* ¶¶ 32–26). Finally, while Plaintiff maintains that Defendants intended to defraud her and that she reasonably relied on her Commissions Agreement to her detriment (*see id.* ¶ 36), these barebone recitations of legal elements are insufficient to survive Defendants' Motion.

For these reasons, Plaintiff fails to state a claim for common law fraud under Rule 8(a) and Rule 9(b)'s heightened pleading standard. In addition, because Plaintiff has not pled a predicate claim for common law fraud, she cannot maintain a separate claim for conspiracy to commit fraud. Thus, Count III is **DISMISSED** *without prejudice*.

> ### D. The Court Must Dismiss Plaintiff's Breach of Contract Claims (Counts II, V, & VI)

> #### i. Plaintiff Fails to Plead a Breach of Contract Claim (Count II)

With respect to Count II, Defendants argue that Plaintiff fails to plead a single contractual provision or amount allegedly owed to her in support of her breach of contract claim. (Mov. Br. at 12). Plaintiff opposes, claiming that she "has clearly pled" that Defendants "violated the Contract, i.e., Sales Compensation Plan signed on February 8, 2024." (Opp. Br. at 8). She argues that she "did not receive the monies, compensation, and commissions owed to her" upon her termination on August 9, 2024. (*Id.* at 9). She further asserts that she "was not renumerated the

18

monies owed and contracts earned." (*Id.* (citing "Contract ¶ 9")).

"To establish a breach of contract claim under New Jersey law, a plaintiff must show that: (1) the parties entered into a valid contract, (2) the defendant failed to perform her obligations under the contract, and (3) she sustained damages as a result." *Ensey v. Gov't Emps. Ins. Co.*, 663 F. App'x 172, 176 (3d Cir. 2016) (citation modified). When assessing a breach of contract claim, "[t]he court determines what obligations the parties owed each other, often by interpreting the express contract, and decides if one party failed to do what it promised." *Dougherty v. Drew Univ.*, 534 F. Supp. 3d 363, 373 (D.N.J. 2021) (citing *Woytas v. Greenwood Tree Experts, Inc.*, 206 A.3d 386, 392 (N.J. 2019)).

The Court agrees that Plaintiff has failed to plead a breach of contract claim. As a preliminary matter, the exact contract(s) at issue remains unclear. Indeed, the allegations specific to Plaintiff's breach of contract claim fail to identify the name of the contract allegedly breached. (*See* Am. Compl. ¶ 28 (alleging that "[t]he Contract set forth contractual obligations on [the parties]" and that Plaintiff "performed all of the obligations under the terms of the contract")). In other paragraphs, the Amended Complaint refers to both a "Sales Compensation Plan" and a "Commissions Agreement." (*Id.* ¶¶ 19 & 36). Notwithstanding these ambiguities, Plaintiff failed to plead any specific contractual obligation Defendants allegedly breached. (*See generally id.*). Plaintiff's citation to "Contract ¶ 9" is of no moment because she did not append the contract(s) at issue to her pleading or her opposition brief. (*See generally id.*; *see also* Opp. Br.). Similarly, Plaintiff has not identified the amount of compensation she received in connection with her termination, if any. (*See generally* Am. Compl.). Nor did Plaintiff allege the specific amount of compensation she is allegedly owed. (*See generally id.*). For these reasons, Plaintiff's breach of contract claim is woefully deficient. Accordingly, Count II is **DISMISSED** *without prejudice*.

19

### ii.    Plaintiff Fails to Plead an Unjust Enrichment Claim (Count V)

Next, Defendants argue that Plaintiff's unjust enrichment claim, also premised on alleged unpaid commissions, fails because she did not plead "any amount(s) that she is actually owed." (Mov. Br. at 12–13).  Defendants also contend that Plaintiff's claim for unjust enrichment (Count V) is "entirely duplicative" of Plaintiff's breach of contract claim (Count II) because both appear to rest on the same allegedly unpaid commissions that Plaintiff claims are governed by the parties' express (albeit unidentified) contract.  (*Id.* at 13).  Plaintiff opposes, offering the same arguments noted above in connection with her breach of contract claim.  (*See* Opp. Br. at 8–9).  She also argues that "Defendants retained the promised Commissions and the Benefits of [her] hard work" and that "this is the unjust enrichment."  (*Id.* at 9).

Under New Jersey law, to state a claim for unjust enrichment, a plaintiff must allege "both that defendant received a benefit and that retention of that benefit without payment would be unjust." *Hughes v. Panasonic Consumer Elecs. Co.*, No. 10-0846, 2011 WL 2976839, at *26 (D.N.J. July 21, 2011) (quoting *Iliadis v. Wal–Mart Stores, Inc.*, 922 A.2d 710, 723 (N.J. 2007)). Unjust enrichment also "requires that [a] plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant **beyond its contractual rights**." *VRG Corp. v. GKN Realty Co.*, 641 A.2d 519, 526 (N.J. 1994) (emphasis added).

"Unjust enrichment is not an independent theory of liability"; rather, it "is the basis for a claim of quasi-contractual liability." *Hatteras Press, Inc. v. Avanti Comput. Sys. Ltd.*, No. 16-5420, 2017 WL 2838349, at *5 (D.N.J. June 30, 2017) (quoting *Nat'l Amusements, Inc. v. N.J. Turnpike Auth.*, A.2d 262, 267 (N.J. Super. Ct. Law Div. 1992), *aff'd*, 645 A.2d 1194 (N.J. Super. Ct. App. Div. 1994)).  Thus, "under New Jersey law, liability based on quasi-contractual principles

20

cannot be imposed 'if an express contract exists concerning the identical matter.'" *Freightmaster USA, LLC v. Fedex, Inc.*, No. 14-3229, 2015 WL 1472665, at \*6 (D.N.J. Mar. 31, 2015) (quoting *Suburban Transfer Serv., Inc. v. Beech Holdings, Inc.*, 716 F.2d 220, 226–27 (3d Cir. 1983)). Accordingly, "[r]ecovery for unjust enrichment cannot exist when there is an enforceable agreement among parties." *Gujja v. Inpatient Servs. of N.J., P.C.*, No. 21-19416, 2022 WL 2834998, at \*2 (D.N.J. July 20, 2022) (citing *Hatteras Press, Inc.*, 2017 WL 2838349, at \*5).

The Court finds that Plaintiff has not pled an independent basis for an unjust enrichment claim. The Amended Complaint, even when read in a light most favorable to the Plaintiff as the non-movant, alleges that Defendants failed to renumerate commissions owed to Plaintiff pursuant to one or more contractual obligations between the parties. (*See, e.g.*, Am. Compl. ¶ 42 (claiming that "Defendants received the benefit of services provided by Plaintiff . . . without paying Plaintiff Robertson in full for these services, i.e. commissions owed")). Based on a complete reading of the allegations, Plaintiff's unjust enrichment claim is duplicative of her breach of contract claim. For these reasons, Plaintiff's unjust enrichment claim fails. Thus, Count V is **DISMISSED** *without prejudice*.

### iii.    Plaintiff Fails to Plead a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Count VI)

Similarly, Defendants assert that Plaintiff's claim for breach of the implied covenant of good faith and fair dealing "must allege something *more* than a breach of contract." (Mov. Br. at 14). Defendants argue that Plaintiff's termination, allegedly done without "good cause" (*see* Am. Compl. ¶ 48), cannot form the basis of a claim for breach of the implied covenant of good faith and fair dealing. (Mov. Br. at 14). Specifically, they claim that "nothing in the commission agreement entitled Plaintiff to ongoing guaranteed employment, employment for any specified

period of time, or employment absent 'good cause'—nor has Plaintiff alleged any reasonable expectation to the contrary." (*Id.*).  In addition, Defendants contend that Plaintiff "fails to plead any conduct that violated the implied covenant of good faith and fair dealing with respect to her rights under any contract." (*Id.*).  Nor does Plaintiff's PIP support such a claim.  (*Id.* at 14–15).  Plaintiff opposes for the same reasons noted above in connection with Counts II and V.  (*See* Opp. Br. at 8–9).  In addition, she states that the "covenant of good faith and fair dealing is implied in every contract in New Jersey." (*Id.* at 8).

"Every party to a contract . . . is bound by a duty of good faith and fair dealing in both the performance and enforcement of the contract." *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 864 A.2d 387, 395 (N.J. 2005).  "The covenant of good faith and fair dealing calls for parties to a contract to refrain from doing 'anything which will have the effect of destroying or injuring the right of the other party to receive' the benefits of the contract." *Id.* at 396 (quoting *Palisades Props., Inc. v. Brunetti*, 207 A.2d 522, 531 (N.J. 1965)).  Proof of "bad motive or intention" is essential to an action for breach of the covenant. *Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1130 (N.J. 2001).  Importantly, the covenant of good faith and fair dealing involves an implied duty, and a breach of such implied covenants must differ from a literal violation of the contract. *Wade v. Kessler Inst.*, 798 A.2d 1251, 1259 (N.J. 2002); *see Brunswick Hills Racquet Club, Inc.*, 864 A.2d at 396 ("A plaintiff may be entitled to relief under the covenant [of good faith and fair dealing] if its reasonable expectations are destroyed when a defendant acts with ill motives and without any legitimate purpose.").  In addition, "a plaintiff may get relief if it relies to its detriment on a defendant's intentional misleading assertions." *Brunswick Hills Racquet Club, Inc.*, 864 A.2d at 396 (citing *Bak–A–Lum Corp. v. Alcoa Bldg. Prods., Inc.*, 351 A.2d 349, 352 (N.J. 1976)).

Courts generally apply claims for breach of the implied covenant of good faith and fair dealing in three ways, including: (i) to "permit[ ] the inclusion of terms and conditions not expressly set forth in the written contract"; (ii) "to allow redress for bad faith performance of an agreement even where the defendant has not breached any express term"; and (iii) to "permit[ ] inquiry into a party's exercise of discretion expressly granted by the contract's terms." *Adler Eng'rs, Inc. v. Dranoff Props., Inc.*, No. 14-0921, 2014 WL 5475189, at *11 (D.N.J. Oct. 29, 2014) (citing *Seidenberg v. Summit Bank*, 791 A.2d 1068, 1076 (N.J. App. Div. 2002)).  Notably, however, a claimant "may not maintain a separate action for breach of the implied covenant of good faith and fair dealing [where] it would be duplicative of [its] breach of contract claim." *Id.* (quoting *Hahn v. OnBoard LLC*, No. 09-3639, 2009 WL 4508580, at * 6 (D.N.J. Nov. 16, 2009)).

Here, the Court cannot readily distinguish any separate basis for Plaintiff's claim for breach of the implied covenant of good faith and fair dealing.  (*See generally* Am. Compl.).  Indeed, Plaintiff has not provided any terms that govern the parties' purported agreement(s), let alone terms that were not expressly set forth therein.  For the same reasons, it is impossible to assess whether Count VI is premised on an improper exercise of contractual discretion afforded to Defendants.  Significant here, the Amended Complaint does not allege any bad faith conduct carried out by the Defendants.  (*See generally id.*).  Although Plaintiff alleges that she received a PIP in mid-2024, the Amended Complaint is bereft of allegations that suggest the PIP resulted from an ill motive or bad faith held by the Defendants.  (*See id.* ¶ 20).  Plaintiff's assertion that her new manager implemented the PIP because she "was positioned to terminate Plaintiff," without more, is conclusory and thus insufficient to sustain a claim for breach of the implied covenant.  (*See id.*).  For these reasons, Plaintiff fails to allege a claim for breach of the implied covenant of good faith and fair dealing.  Accordingly, Count VI is **DISMISSED** *without prejudice*.

23

### E.   Plaintiff Fails to Plead a Claim for Violation of the NJWPL (Count VII)

Finally, Defendants argue that Plaintiff's failure to plead any specific amounts owed to her is detrimental to her claim for alleged violation of the NJWPL.  (Mov. Br. at 15).  In addition, they argue that "[t]o the extent this claim is based upon a theory that she would have earned additional amounts if she had continued working, such speculative damages are not wages and are not recoverable under the NJ[WPL]."  (*Id.*).  Plaintiff opposes for the same reasons noted above in connection with Counts II, V, and VI.  (Opp. Br. at 8–9).  She does not oppose the Motion with any specific arguments regarding her claim under the NJWPL.  (*See id.*).

The New Jersey Wage Payment Law is considered a "remedial statute" that "governs the time and mode of payment of wages due to employees."  *Musker v. Suuchi, Inc.*, 331 A.3d 900, 905 (N.J. 2025) (quoting *Maia v. IEW Constr. Grp.*, 313 A.3d 887, 895 (N.J. 2024)).  It "is designed to protect an employee's wages and to assure timely and predictable payment." *Hargrove v. Sleepy's, LLC*, 106 A.3d 449, 463 (N.J. 2015).  Under the statute, an employer generally "must pay an employee at least twice during a calendar month." *Id.* at 457 (citing N.J. Stat. Ann. § 34:11–4.2).  The NJWPL establishes "a minimum wage" in addition to "an overtime rate for each hour of work in excess of forty hours in any week for certain employees."  *Id.* at 458 (citing N.J. Stat. Ann. § 34:11-56a4).  Pursuant to the NJWPL "every employee . . . shall have a right of civil action against any . . . employer for the full amount of his wages in any court of competent jurisdiction in this State." N.J. Stat. Ann. § 34:11-4.7.

For the same reasons noted above with respect to Counts II, V, and VI, Plaintiff fails to state a claim under the NJWPL because she does not allege any specific dollar amount owed to her pursuant to the parties' agreement(s).  (*See generally* Am. Compl.).  Nor does she claim that Defendants failed to pay her a minimum wage, overtime, or on a bi-monthly basis.  (*See generally*

24

*id.*).  To the extent Plaintiff's NJWPL claim is premised on another alleged failure by Defendants, Plaintiff's Amended Complaint and opposition brief fail to adequately set forth a clear alternative basis for relief under the statute.  (*See generally* Am. Compl.; *see also* Opp. Br.).  Moreover, as this Court has previously noted in connection with post-termination pay, a plaintiff "may not bring a claim under the [NJWPL] for future salary." *Pickholz v. Transparentbusiness, Inc.*, No. 22-2504, 2025 WL 1779165, at *8 (D.N.J. June 26, 2025) (citing *Sud v. Ness USA*, No. 21-12330, 2022 WL 1963711, at *4 (D.N.J. June 6, 2022)).  Accordingly, Count VII is **DISMISSED** *without prejudice*.

IV.    **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED**.  Plaintiff's Amended Complaint is **DISMISSED** *without prejudice*.  An appropriate Order accompanies this Opinion.

<u>s/ Esther Salas</u>
**Esther Salas, U.S.D.J.**

25